Good morning. The first is Francisco Lopez v. Attorney General, Appellate No. 19-2700. We have the petitioner. Thank you. Good morning. It may please the Court. Lisa Kasdan on behalf of Petitioner Amilcar Francisco Lopez. I'd like to reserve five minutes for rebuttal. For over seven decades, from the 1940s through late 2016, the Board of Immigration Appeals had applied one clear rule to determine whether a theft offense was considered to be a crime involving moral turpitude, or CIMT. Isn't the real question in front of us is whether that new law that has changed after that 70-year period applies retroactively? Yes, Your Honor. And what's your position? My position is that... Is it an abrupt departure or a natural progression? Yes, my position is that it is a significant and abrupt departure from the well-established practice. In matter of Diaz-Lizarraga, the Board acknowledges the new and expanded rule was made in order to conform with the model penal code and the evolution of criminal law and criminal statutes over the last seven decades. The opinion itself stated that an update of the law was necessary. It also goes on to state, and I quote, Viewing the matter from a modern perspective, we conclude that our early jurisprudence does not provide us with good reasons to persist in the rule that moral turpitude requires a taking involving a literally permanent intended deprivation. So this is not simply a clarification. Now, the BIA didn't conduct any real retroactivity analysis. Is this the type of situation where we send it back and say, please do a five-factor analysis, or is it your position that we could do this ourselves? It's my position, Your Honor, is that you can decide here to reverse this decision and allow Mr. Amilcar Francisco to be free. Do you owe any deference to the BIA as to the way they view this that it shouldn't be retroactive?  In speaking of Chevron deference, while the Board of Immigration Appeals does have deference to make judicial decisions, this is more of a legislative act. And this legislative act, I believe, is impermissible. And if I could turn to a Tenth Circuit case, there's a Tenth Circuit case. I'll give you the name. Is it cited in your brief? It is cited, but it's cited for a different purpose. If I can. Alfonso Denise Robles v. Loretta Lynch. In this Tenth Circuit decision, Judge Gorsuch states that when it comes to retroactivity and the law, we can say a couple of things with certainty. First and foremost, we know that legislation is rarely afforded retroactive effect. It is a principle which has always been held sacred in the United States, that laws by which human action is to be regulated looks forward, not backwards, and are never to be construed retrospectively unless the language of the act shall render such construction indispensable. Are we talking about a legislative act here or the BIA's, the way the BIA has applied the concept of permanence? So the BIA as an agency takes both judicial and legislative acts. And my argument here is that this is legislative. This is rulemaking. And because it's rulemaking, the deference is not to retroactively apply this rule. How does the actual reliance factor weigh here? It seems to me that that's a problem for your argument. Am I right about that? So the government states that this factor requires, in fact, reliance. But I don't believe that's the proper standard for this circuit, because this circuit has recognized, in view of Supreme Court cases Landgraf, St. Cyr, and Haddix, that actual reliance on the prior statute is not required. And there was a Ponapula v. Ashcroft 2004 Third Circuit case that summarized this by saying the likelihood that the party before the court did or did not, in fact, rely on this prior statute of law, this prior state of law, excuse me, is not germane to the question of retroactivity. So I believe that using, in fact, reliance is improper here. Well, how about in Laborers International, where we really said actual reliance is necessary? So in Laborers International, these Supreme Court cases and the case I mentioned in the Third Circuit came after that case. And so the precedent would be to not have, in fact, reliance, but instead it could be reasonable reliance. I know that reasonable reliance standard was adopted. But Laborers International is still good law, is it not? And our precedent requires that if we have an inconsistency, the oldest law applies. So I didn't follow you either on that point. Yes, Your Honor. If we are using the standard of, in fact, reliance here, then I think it can be stated well. There's nothing in the brief that exactly sets forth how he, in fact, relied on the standard and on the old statute. But I think his reliance would be clear since he's been a permanent resident in this country for over 30 years. He's a father of four. His entire family is here, and he hasn't been in his home country. Reliance would mean he had to have knowledge of it and therefore rely on it. So we would send it back to the agency to have a hearing where he could put forth evidence. Isn't that the way we would deal with that? I suppose, Your Honor, if, in fact, reliance is being used here, then it would need to go back to the agency to see. Although it's only one of the factors. Correct. So would the other factors outweigh it? I think the other factors outweigh in favor of Mr. Francisco, and I'm happy to go through each one if you'd like me to. Because it sounds to me like you're saying presumed reliance is appropriate rather than actual reliance. Yes, or reasonable reliance. But you've answered the question that I was going to ask that Judge Rendell posed to you. This is a weighing test. And so why shouldn't we give as much weight to the reliance issue under the weighing test? Well, this is a five-factor test, Your Honor. And so if we apply each of the factors, I believe even notwithstanding factor three, the reliance standard, I can go through each one. What's your strongest position? Well, my strongest position is that this is an abrupt departure. But I can speak to factor one. I'd like to go back to reliance if we could. Are you familiar with the cases from other circuits in which in the plea context and the immigration context, they looked more at whether it would be objectively reasonable to have relied on the state of the immigration law at the time of the plea? Have you considered any of those cases? Your Honor, I'm not familiar with those cases. There are a series of cases from other circuits that talk about, after Padilla, that a criminal defendant should be advised of the status of the consequence of a plea on their immigration status. And those cases talk about it would be reasonable or an objectively reasonable person would have relied on the state of affairs rather than the actual reliance on whether his plea would have impacted his immigration.  Yes, Your Honor. Yes, I am. Okay. How does that cut? Does that help you? Does it hurt you? What's your position? I do think it helps me, Your Honor. I think that when someone is not a United States citizen, they should be informed of the immigration consequences of their plea and make a decision based on the fact that that would, in fact, harm them, causing deportation to be a serious issue that would send them back to a country that they don't know. And so I believe that when he – I don't have the evidence in front of me presented to this Court what reliance he actually had, but I do know in taking a criminal plea, you must first determine is this a United States citizen and will that person be affected should this plea go forward. And he did plea. He did plea. He did accept a plea in 2012. I wanted to just see if we can narrow the number of issues. You presented three. One was the issue of retroactivity and the application of the new pronouncement from your point of view. Yes. You also talked about the use of the video appearance. Do you agree that our 2019 decision in La Ziga undermines your argument and that it no longer is viable in this circuit? Are you familiar with the case? La Ziga? Yes, ma'am. No, I'm not familiar. There's a presidential opinion from 2019 that said that a circuit court – that it has jurisdiction even when the defendant appears in a state within our district, but the IJ is in another circuit. Yes. Are you familiar now with that case? Yes, ma'am. Do you agree that that opinion – I agree that that is not an issue before the Court today. The second question I had to just narrow the issues is you asked us also to review the cancellation removal. If we conclude that we need to remand either for the court to do its own – the BIA to do its own retroactivity analysis or if we determine it needs to evaluate whether the old law as applied to your client still would render it a CIMT. Assume we have to send it back for one of those grounds. Do we nonetheless still lack jurisdiction over your cancellation removal? Because it's really a – I know you kind of describe it as due process, but weren't you really asking us to look at the discretionary – My message today is retroactivity, Your Honor. Thank you. Can I go forward with the other factors? If you'd like to hear the burden factor or anything further. I don't know that any of the panel members have any questions further on that point.  We'll hear you on rebuttal. Thank you, Your Honor. Okay. Thank you. Thank you. Good morning. Good morning, Your Honor. Good morning. May it please the Court. My name is Craig Newell, and I'm here on behalf of the Attorney General. I understand that the retroactivity issue is the most likely concern for this Court. And starting there, I think the first thing to look at is the main purpose of the retroactivity analysis. It's to determine whether – what are the ill effects of any of the retroactive application of Mater deus liserago. And it is really the third and fourth factor, the reliance and the burden factor, that provide the best evidence of any such ill effect. And here, though, there is no case to be made for actual detrimental reliance on the part of Mr. Francisco. And the burden, while it is for sure removal and it weighs in his favor, that factor is not conclusively in his corner because the Board would have likely reached the same result even prior to Mater deus liserago. How is that? I think that if the Board's prior – the purpose of the intent to permanently deprive, the prior precedent, was to distinguish between intended permanent takings and – or more substantial intended takings and temporary takings. The Board's real concern was temporary takings and not having them included in the concept of – Well, you could say that, but the Board expressed the view that it had to be permanent. So if you're saying the Board intended that its concern was something other than permanent, certainly it had to have said that, but the standard definitely was a permanent taking. You're right, Your Honor. You're right. And I'm not disputing that. And the statute here envisions allowing something other than a permanent taking to constitute the second degree larceny. On its face, New York's definition of deprivation and appropriation model – follow the model penal code. If you dive into New York case law about what is their mens rea for larceny, it is an intent to permanently or virtually permanently deprive or appropriate the property. And there's no daylight between the intent to permanently deprive and virtually permanently deprive. But we apply a categorical approach, and we look at the statutory provisions. And here it's much broader than permanent. I guess I'm not understanding your argument. Okay. I see, Your Honor. And it is a categorical approach. And what I dispute is that it's not much broader if you really look at the specifics. Well, the Second Circuit seems to think that it is. You're right. And you're asking us to deviate from a court that may see the New York larceny statute more frequently than us. That is true, Your Honor. And what grounds would we have to say that our Sister Circuit is wrong on its interpretation? And again, going back to what Judge Rendell said, using the statutory elements put aside the judicial interpretation that you're kind of looking at. And I don't think that the court has to issue a divergent opinion from the Second Circuit. The actual reliance factor and the board's strong interest in the uniformity of applying its precedent. But uniformity can work both ways. You can have uniformity pre-Diaz-Lazaraga and post as well. And it doesn't seem to me to do much violence to the uniformity principle if you do it that way. I see what you're saying, Your Honor, about that and the fact that the immigration laws do change. But the immigration laws are a prime federal law that's solely within the power of the executive. And the board has that authority to decide how to assess the ambiguous term of crime involving moral turpitude. Well, but the board here said, as your colleague quoted, that we need to update. We need to change. So their interest in uniformity of application they kind of put to the wayside because they had to change to be more in line with the modern view. So if they wanted uniformity, they probably wouldn't have changed their standard. If we were, if, that would prevent the board from ever reassessing in the face of contrary evidence. And that's the purpose of having this ability through its adjudicative case-by-case process of making these assessments and making these alterations to its precedent when needed. And that was what happened in Mar-a-Diaz-Lazaraga. Well, looking at the factors here, which one do you think is the most beneficial or favorable to you? It is the actual reliance factor. The case law from the International Laborers Union, the Allegheny Ludlum, that case, that is this court's case law on how to judge the retroactive application of a new rule set forth through agency adjudication. The context is so different here. It is. As Judge Schwartz pointed out, you know, in the plea context, we're very concerned with people pleading with the understanding or knowledge of the effect of this plea on their immigration status and whether they could be deported. And we take notice of that, that clearly they're concerned about that. That's very different from the international laborers situation, is it not? It is. And that is – two factors about that, though, is that is rooted in the Supreme Court's Padilla case, which came in – it came out in 2010. Here, Mr. Francisco pled guilty in 2012, two years thereafter. So that would have – would have, should have been in the minds of his defense counsel and the New York court that presided over his criminal proceedings. But doesn't that cut against you? Doesn't it hurt you? Because if it was this sort of thing known in the law that there could be consequences on your immigration status, presumably there was some reliance on the state of the law. And, in fact, two circuits have said just that, that it's potentially reasonable to rely on the state of the law, therefore actual reliance need not be established in this context. If that was so, Your Honor, it should have been not that burdensome for Mr. Francisco to put forth at least a testimonial statement that he relied on that prior case law. There's other things that someone could rely on. Just the main thing is to know that they were caught doing this and they are plead guilty for a lesser sentence. He was charged with three other – three or four other criminal offenses. And so that is also a strong factor in a person. It's not always about their immigration context. I think the hardest part of your argument is saying this is not an abrupt departure. What's – what do you have to say about that? Yes, Your Honor, I understand that that's the most difficult factor. I'm fighting an uphill battle on that factor. Maybe with one hand tied behind my back. But the key is to not just look at the form of the way Diaz-Lizarraga is worded, but how – this is not a radical change. The purpose of the prior case law was to make sure that intended temporary takings were not included within the context of a theft, crime involving moral turpitude. That same purpose is here now. It's just adopting it to understand that this – to understand the more modern concept of how the states are – have written their statutes or are interpreting their statutes. And with the more precise understanding of the categorical analysis that the agency and the courts are facing because of Mathis and those other cases from the Supreme Court, the board can no longer default, as it did prior to Maduro-Diaz-Lizarraga, on its – it can no longer default to making assumptions based on the nature of the case. Oh, this is a retail theft. We're going to say that that's a crime involving moral turpitude. Or just kind of say theft is a categorical crime involving moral turpitude. When there was no need to get into whether there was an intended permanent taking or an intended temporary taking. It's noticeable that the board's prior precedent that had to dive into whether there was an intended permanent taking. All those cases arose from a case where the theft statute was one that encompassed things such as joyriding and borrowing items – takings that do not diminish or barely diminish a person's property. How do we get around the plain language of the BIA's opinion where they go through – for 70 years we viewed the law as X. But we've now looked at how the law is viewed by all the states, and now we're going to say it's Y. How is that not a recognition by the board itself that it's changing in a significant way its own precedent? Right. I agree. The question is whether this change is an abrupt departure, an abrogation of the past, or whether it's a change but one that is within the evolution of how the cases were settled both before and afterward and still is remaining an underlying purpose. Admittedly, this is not the strongest factor for the government. Do you want us to create a circuit split in this matter? We do. And that's why I say this is an uphill battle, and I understand how the other circuits went. But in this case, if you get into a more thorough investigation of the factors, especially the reliance factor and the uniformity factor, I think the mere fact that the law changes would prevent anyone from stating that an agency can maintain its interests in the statute that it administers. You argue about deference. I don't understand your Chevron argument. My Chevron argument is that if this court... Initially, the first question is a retroactive application question. If this court agrees that the matter of Diaz-Lizarraga can be applied retroactively, then the court should accord deference to the board's interpretation of the ambiguous term crime involving a moral interpreter, that it can involve an intent to permanently deprive or to deprive under circumstances that substantially erode the property interest. And that the board set forth a very clear and reasoned explanation for why it has made, admittedly, the change, but why this evolution was necessary for law and why those types of thefts should be considered ones that involve moral interpreters. Is it your position we should send this back to the BIA for application of the retroactivity factors? The court may do so upon my reading of the precedent in the NLRB context. It reviews for whether there's a manifest injustice in applying retroactively. I think there are outstanding questions. The way it was presented to the board was just that in OBEA, the Second Circuit did not apply it. So the board, faced with a case that did not have to apply and its strong interest in applying its precedent, I mean, the second case, the matter of OBEA case that followed matter of Diaz-Lizarraga, is on point controlling authority because it involves New York's particular... But the Second Circuit deemed it not an appropriate pronouncement of the law. So how can... And that's what the BIA relied on in our case was its own decision in OBEA. But when they did that, they did it at a time when the Second Circuit said that's not the correct statement of the law. The Second Circuit said that matter of OBEA cannot be applied like matter of Diaz-Lizarraga retroactively. It did not rule on the appropriateness of the merits of that decision, the substantive merits of whether under the matter of Diaz-Lizarraga standard that allows for an intent to permanently deprive or a substantial erosion of property rights, whether the New York statute in case law met that standard. I want to follow up on something Judge Rundell just asked you about remand. You drop a footnote in your brief and say we should remand. Are you asking if we conclude some question about retroactivity? So my question is should we remand for the BIA to let them make a retroactivity decision or should we do that? If we do it ourselves, should we remand to let them to decide whether or not this particular conviction of this particular petitioner qualifies under the old law? So what would be the remand request? If remand were to occur, what should we send back to BIA? As I see you have many options in front of you. What would you like as representative of the government? If the court does not agree that this can be retroactively applied, the board agencies make this retroactive analysis many times. There are factors that are within the board's expertise, whether the board, as you say how it has written matter of Diaz-Lizarraga, it knows what it intended with that decision, whether that's abrupt change or not. But that's within its knowledge. And also the actual reliance is an evidentiary matter. Here he put forth no evidence, but that is something that could be considered on a remand if the court views that as an option. So you're saying the BIA could do the retroactivity analysis itself? Yes, it can. Or we could do it and we could send it back for them to apply the old law if we conclude retroactivity doesn't apply here. Correct, Your Honor. The crime involving moral turpitude is an ambiguous term and the board should be able to assess that. And if we were to send back on remand, would your position continue to be that we would lack jurisdiction on the cancellation or removal argument? Yes, Your Honor. Regardless of what we do. Regardless of what you do. Thank you. Thank you, Your Honors. Okay. Your Honors, there was one clear rule for over seven decades that a CIMT required, a theft offense was only considered a CIMT if and only if it was committed with the intent to permanently deprive property from its owner. There has been an abrupt change in this law made here today. Could you please address Judge Schwartz's question to your opponent? What do you want us to do? I would like you to decide today that retroactivity in this case is impermissible and reverse the decision of the BIA. And not to remand that issue back to the BIA? I don't believe it needs to go back to the BIA. The BIA determined matter of liseraga and decided to apply matter of liseraga on this petitioner's case in their BIA decision here. What about your colleague's argument that really the permanence is not just the issue, but their concern is that plain old temporary takings aren't included? Should the BIA relook the issue of whether the statute here would encompass something that New York is concerned about, that the BIA is concerned about from the standpoint of moral turpitude? In other words, here they have an analysis that really wasn't something that we think they should have done. We think they should have looked more at retroactivity. Okay, so we say it doesn't apply, but then is there an open issue about whether even if the new standard doesn't apply, whether the statute here under the permanent but definitely not temporary taking, whether it still would be a crime of moral turpitude? I mean, you're asking us to say this is not a crime of moral turpitude because we can't look retroactively. Well, that ultimate issue is really one that the BIA decides, is it not? Your Honor, I'm not saying that it's not a crime of moral turpitude because of this retroactive action. You're not. I'm saying that initially it was never considered to be a crime involving moral turpitude. At the time of his plea, when he accepted his plea, the BIA states itself that this was an update to conform with the model penal code, that this was an update in order to capture more criminal statutes. Right, but wouldn't we compare, we'd look at the concept of permanence and then we'd look at the New York statute and say, well, you know, this statute really does speak about what we were talking about back then, about permanence. It doesn't say temporary. It's broader, but is it broader in a way that still speaks to the issue of, you know, there has to be some real quasi-permanent, some definite taking here. Your Honor, I think that because this arose out of matter of Obeah. Matter of Obeah and matter of Diaz-Lizarraga came about on the same day. And then the Obeah case went to the Second Circuit because in matter of Obeah, the reason why they were able to consider that he had a crime involving moral turpitude is because of the new standard they applied, not because of any old standard. Because when they looked at the old rule, he didn't have a crime involving moral turpitude. But Diaz-Lizarraga came out on the same date stating that because of this new decision, he, Mr. Obeah, has a CIMT. So let me, it may be redundant of the question you just asked, but let me ask it in a slightly different way. Let's assume we conclude the law does not apply retroactively, and therefore the old law should be applied to your client's prior conviction, okay? Shouldn't the BIA be the first to determine whether that's, what his conviction is under the old law? We don't have a ruling on that to review because the BIA chose to apply the new law. So don't we have to remand at least for the BIA to consider that point? I do believe that the BIA in their own decision already, the reason why I'm bringing up Mr. Obeah in this matter is because the definitional provisions in the New York larceny statute are identical for Mr. Obeah and Mr. Francisco here. They already did the analysis in matter of Obeah. But we don't have it applied to your client who committed this offense by extortion. Obeah was a petty larceny case, so it was not the same crime, correct? It's not the same crime, but the definitional provisions of deprive and appropriate are the same. They're identical to the petty larceny statute. Those are your position that the President, by committing this offense by extortion, is of no consequence in the analysis by the BIA of whether your client's crime of conviction is a crime involving moral turpitude under the old law? That's correct, Your Honor. That's my position. Okay, great. Thank you very much. Thank you. We thank counsel on both sides for their helpful arguments today, and the court will take them.